UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW NATHAN REYES,<br><br>    Defendant. | Case No. 1:25-cr-00033-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are Defendant Andrew Nathan Reyes's Motion in Limine to Exclude Evidence and Testimony of Firearm's Stolen Status (Dkt. 62), Motion in Limine Regarding Search Warrant (Dkt. 63), and Motion in Limine to Exclude Evidence and References to 2021 Misdemeanor Injury to Child State Case (Dkt. 64). The Government filed a consolidated response, narrowing the issues to the firearm's stolen status and references to search warrants (Dkt. 68 at 1). Reyes filed a reply addressing the stolen-status and search-warrant motions (Dkt. 73). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Crim. R. 1.1(f); Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court grants in part and denies in part the motions.

**MEMORANDUM DECISION AND ORDER – 1**

**BACKGROUND**

Reyes was charged in Count One of the Superseding Indictment with unlawful possession of firearms as a convicted felon in violation of 18 U.S.C. § 922(g)(1)[1] (Dkt. 42). The present motions concern evidence the Government intends to introduce at trial relating to the searches of Reyes's residence, the firearms recovered during those searches, and certain surrounding facts.

According to the Government's proffer, law enforcement interviewed Reyes's son, B.R., in December 2024. B.R. reported that Reyes used drugs in the home and possessed firearms in the bedroom Reyes shared with his then-girlfriend, now wife, Emilie Bassett. The Government further proffers that officers obtained a search warrant and executed it at Reyes's residence on December 17, 2024. During the execution of that warrant, Bassett exited the residence before Reyes, and Reyes exited approximately twelve minutes later. Officers then searched the residence and found three firearms in a locked gun case wedged between the bed frame and mattress in the bedroom Reyes shared with Bassett, including a Hi-Point 9mm rifle, a Smith & Wesson 9mm pistol, and a Remington .22 rifle with a scope. The Government proffers that the Hi-Point was purchased by Michael Bassett, Bassett's ex-husband; the Remington had no serial number; and the Smith & Wesson had previously been reported stolen by its owner (Dkt. 68 at 4–6).

The Government also proffers that, after Reyes's arrest, Reyes called Bassett from jail and stated that officers had missed "the Beretta" in the closet and that "the guns are all locked up." Based on that call, officers obtained a second search warrant. During the execution of that second

---

[1]    The Superseding Indictment also charged Reyes in Count Two with violation of 18 U.S.C. § 922(g)(3) (Dkt. 42). The Government moved to dismiss Count Two under Rule 48(a) of the Federal Rules of Criminal Procedure in light of the Supreme Court's pending decision in *United States v. Hermani*, S. Ct. Dkt. No. 24-1234 (Dkt. 67). Reyes did not oppose the motion, and the Court granted it (Dkt. 70).

MEMORANDUM DECISION AND ORDER – 1

warrant on December 31, 2024, officers found a Beretta 9mm pistol in the bedroom closet (Dkt. 68 at 6–7).

Reyes moves to exclude references to the search warrants, arguing that the warrants are irrelevant to whether he knowingly possessed firearms and that use of the phrase "search warrant" will improperly signal to the jury that a judge already reviewed and approved the Government's investigation. Reyes also moves to exclude evidence that the Smith & Wesson was stolen or reported stolen, arguing that such evidence does not prove knowing possession and creates an unfair risk that the jury will infer that he stole the firearm or knowingly possessed stolen property.

## LEGAL STANDARD

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). A motion in limine should not be used, however, to resolve factual disputes or weigh evidence. *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008).  Further,  rulings  on motions in limine are provisional and are "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). As such, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *City of Pomona*, 866 F.3d at 1070; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

## ANALYSIS

### A.      Search-Warrant References

Reyes asks the Court to prohibit the Government, its witnesses, and counsel from using the phrase "search warrant" in the jury's presence. Reyes argues the warrants do not bear on whether

**MEMORANDUM DECISION AND ORDER – 1**

he knowingly possessed any firearm and that references to the warrants will invite the jury to infer that a judicial officer already reviewed and approved the Government's evidence. Reyes proposes that the Government instead state that officers lawfully entered and searched the residence.

The Court grants the motion in part and denies it in part. The Court is not persuaded that the Government must sanitize all references to the search warrants. The warrants are relevant because they are part of the factual context in which the searches occurred and are intertwined with other evidence the Government may present. Although the warrants themselves are not other-acts evidence, the Ninth Circuit's contextual-evidence cases confirm that evidence may be admissible when it is necessary to permit the Government to present a coherent and comprehensible account of the crime, so long as there is a sufficient contextual or substantive connection between the evidence and the charged offense. *United States v. Beckman*, 298 F.3d 788, 793–94 (9th Cir. 2002); *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995); *United States v. Wells*, 879 F.3d 900, 928–29 (9th Cir. 2018). Here, the warrants explain law enforcement's lawful presence in Reyes's residence, why officers entered and searched the residence, and why officers returned on December 31, 2024, after Reyes's recorded jail call regarding "the Beretta."

Reyes's proposed alternative—that witnesses simply testify officers were "lawfully" present or "lawfully" searched the residence—does not materially reduce the risk of prejudice and may create confusion. The jury will likely see or hear evidence of an organized law-enforcement entry and search. Describing that event only as a "lawful" entry or "lawful" search, while prohibiting the accurate phrase "search warrant," is an artificial distinction. Further, stating only that officers were "lawfully" present may itself invite questions about the basis for that presence. A limited reference to the execution of a search warrant is a more accurate and straightforward way to describe the circumstances of the searches.

MEMORANDUM DECISION AND ORDER – 1

The Court does not rely on the Government's twelve-minute-delay argument as the principal basis for admitting limited search-warrant references; the Government argues that Reyes's delay in exiting the residence after Bassett exited is relevant to the circumstances in which officers later found the firearms (Dkt. 68 at 10–11). Reyes responds that no witness can testify as to what he was doing during that period and that any inference about his conduct is speculative (Dkt. 73 at 4–5). The evidence that Reyes remained in the residence for a period of time after law enforcement announced its presence may be admissible depending on the trial record and the parties' arguments. But whether that delay ultimately proves significant is not dispositive of the present motion. The search-warrant references are admissible because they explain the searches and provide necessary context for other admissible evidence, independent of any particular inference the jury might draw from the delay.

That said, the Court agrees with Reyes that warrant evidence carries some risk of unfair prejudice. A search warrant is issued by a judicial officer upon a probable-cause determination, and the jury could improperly treat the warrant as an endorsement of the Government's case if the Government emphasizes the warrant process, the issuing judge's review, or the contents of the warrant. The jury's task is not to decide whether probable cause supported the searches, and the Government may not suggest that the issuance of a search warrant proves wrongdoing or validates its trial evidence. *Cf. Wells*, 879 F.3d at 918–20 (warning against the use of law-enforcement techniques or profile evidence as substantive proof of guilt); *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 943–45 (N.D. Cal. 2016) (admitting evidence necessary to provide context for the charged offenses while excluding official conclusions and other evidence whose unfair prejudice outweighed its probative value).

MEMORANDUM DECISION AND ORDER – 1

On the present record, however, the probative value of limited references to the execution of search warrants is not substantially outweighed by the danger of unfair prejudice. The risk Reyes identifies can be adequately addressed by limiting how the Government may use the warrant evidence. The Government may elicit that officers were present at Reyes's residence pursuant to the execution of search warrants and may present testimony necessary to explain the sequence of the searches and the recovery of evidence. The Government may not introduce the warrant applications, affidavits, or judicial findings; may not explain the process for obtaining a warrant; may not argue that issuance of a warrant proves Reyes committed any offense; and may not suggest that any judge or court has endorsed the Government's theory of guilt.

The Court will consider giving a limiting instruction if Reyes requests one. Reyes may timely submit a proposed instruction before trial. Such an instruction might advise the jury that evidence officers executed search warrants is admitted only to explain the sequence of events and law enforcement's presence at the residence, and that the jury may not consider the warrants as evidence that Reyes committed any crime or that any judge has formed an opinion about Reyes's guilt.

Accordingly, Reyes's Motion in Limine Regarding Search Warrant (Dkt. 63) is granted in part and denied in part.

**B.      Smith & Wesson's Stolen or Reported-Stolen Status**

Reyes next moves to exclude evidence and testimony that the Smith & Wesson pistol was stolen. Reyes argues the firearm's stolen status is not relevant to any element of § 922(g)(1) and creates a substantial risk the jury will infer he stole the firearm or knowingly possessed stolen property. The Government responds that the Smith & Wesson's stolen status is relevant because it tends to show the pistol belonged to Reyes rather than Bassett. Specifically, the Government argues

**MEMORANDUM DECISION AND ORDER – 1**

that the firearms attributed to Reyes by B.R.—the Smith & Wesson and the Remington .22 rifle— are the two firearms not traceable to someone else in the home: the Smith & Wesson because it was reported stolen, and the Remington because it lacked a serial number (Dkt. 68 at 11–12).

The Court grants Reyes's motion on this issue. The Government may not refer to the Smith & Wesson as "stolen" or, more accurately in any event, "reported stolen" in the jury's presence without first obtaining leave of Court.[2]

The Government's attribution theory has some relevance. Evidence showing that the Smith & Wesson was not purchased by, transferred to, or otherwise traceable through purchase, transfer, or ownership records to Reyes, Bassett, or Michael Bassett may bear on whether the firearm was associated with Reyes or with another person in the home. The Government may present evidence along those lines, assuming it is otherwise admissible.

But the fact that the firearm was stolen or reported stolen adds little probative value beyond the permissible point that the firearm was not traceable to a person in the home. The Government's theory depends on untraceability, not theft. Indeed, the Government's comparison to the Remington .22 rifle confirms the point. According to the Government, the Remington is relevant to attribution because it lacked a serial number and therefore could not be traced to a purchaser. If untraceability is the relevant feature, the Government can present that feature as to the Smith & Wesson without telling the jury the firearm was stolen or reported stolen.

The Court recognizes the Government's authority establishing that Rule 401 sets a liberal relevance threshold and that relevant evidence is often prejudicial without being unfairly

---

[2]    "Stolen" asserts the truth of an uncharged theft or unlawful taking. "Reported stolen" describes a reported status. But both formulations create substantially the same Rule 403 concern in this case: they invite the jury to infer criminal conduct not charged in the Superseding Indictment and not tied to Reyes by the present proffer.

**MEMORANDUM DECISION AND ORDER – 1**

prejudicial. *See United States v. Velazquez*, 125 F.4th 1290, 1295–97 (9th Cir. 2025); *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *United States v. Allen*, 341 F.3d 870, 886–88 (9th Cir. 2003). Those principles do not require admission of the stolen-status label here. The disputed evidence is not merely damaging because it directly proves a consequential issue; rather, the disputed label adds an uncharged-crime implication to a narrower traceability point the Government can prove through less prejudicial evidence. *See Old Chief v. United States*, 519 U.S. 172, 184 (1997) (explaining that Rule 403 probative value may be assessed in light of evidentiary alternatives); *see also United States v. Wilkins*, 538 F. Supp. 3d 49, 78–82 (D.D.C. 2021) (parsing law-enforcement-encounter evidence as intrinsic location and proximity evidence while excluding drug-possession details that added limited probative value and created unfair prejudice).

The prejudicial effect of stolen-status evidence is substantial. A stolen firearm suggests a separate crime. If the jury hears the Smith & Wesson was stolen or reported stolen, it may infer Reyes stole it, knowingly received it, or acquired it through criminal channels. The Government has not proffered evidence that Reyes stole the firearm, knew it was reported stolen, or knew anything about its origin (Dkt. 62 at 2–3; Dkt. 73 at 11). Nor has the Government proffered evidence establishing how or when the Smith & Wesson came into the residence. Without that missing chain of proof, the stolen or reported-stolen label risks shifting the jury's attention from knowing possession to uncharged theft or receipt-of-stolen-property inferences.

A limiting instruction may adequately cure that prejudice. But telling the jury the firearm was stolen or reported stolen, and then instructing the jury not to infer Reyes stole it or knew it was stolen, would risk emphasizing the very inference the Court seeks to avoid. Because the Government can present its attribution theory through less prejudicial evidence—that the firearm was not purchased by, transferred to, or otherwise traceable through purchase, transfer, or

**MEMORANDUM DECISION AND ORDER – 1**

ownership records to Reyes, Bassett, or Michael Bassett—the probative value of the stolen or reported-stolen status is substantially outweighed by the danger of unfair prejudice.

Accordingly, Reyes's Motion in Limine to Exclude Evidence and Testimony of Firearm's Stolen Status (Dkt. 62) is granted. The Government may identify the Smith & Wesson by make, model, caliber, and serial number, and may present admissible evidence that it was not purchased by, transferred to, or otherwise traceable through purchase, transfer, or ownership records to Reyes, Bassett, or Michael Bassett. The Government may not refer to the firearm as "stolen" or "reported stolen" without first seeking leave of Court outside the jury's presence.

**C.    2021 Misdemeanor Injury-to-Child Case**

Reyes also moves to exclude evidence and references to a 2021 misdemeanor state injury-to-child case. The Government states it does not intend to offer evidence related to Reyes's alleged physical abuse of B.R. or the resulting state criminal litigation during its case-in-chief (Dkt. 68 at 1). Based on that representation, there is no present dispute requiring a broader ruling.

The motion is therefore granted in part. The Government may not elicit evidence during its case-in-chief regarding the alleged 2021 injury-to-child conduct or the related state criminal proceedings. This ruling is without prejudice to the Government seeking leave outside the jury's presence if it contends Reyes opens the door to such evidence.

**ORDER**

IT IS ORDERED:

1.      Defendant's Motion in Limine to Exclude Evidence and Testimony of Firearm's Stolen Status (Dkt. 62) is **GRANTED**. The Government may not refer to the Smith & Wesson pistol as "stolen" or "reported stolen" in the presence of the jury without prior leave of Court. The Government may, however, offer properly supported evidence that the firearm was not purchased

MEMORANDUM DECISION AND ORDER – 1

by, transferred to, or otherwise traceable through purchase, transfer, or ownership records to Reyes, Bassett, or Michael Bassett.

2. Defendant's Motion in Limine Regarding Search Warrant (Dkt. 63) is **GRANTED IN PART** and **DENIED IN PART**. The Government may elicit that officers executed search warrants at Reyes's residence and may present related evidence necessary to explain the searches and the sequence of events. The Government may not introduce the warrant applications, affidavits, judicial findings, or the process for obtaining the warrants; may not argue that issuance of a warrant proves wrongdoing or validates the Government's case; and may not elicit testimony regarding the substantive contents of the warrants without prior leave of Court.

3. Defendant's Motion in Limine to Exclude Evidence and References to 2021 Misdemeanor Injury to Child State Case (Dkt. 64) is **GRANTED IN PART**. The Government may not introduce evidence of the alleged injury-to-child conduct or related state criminal proceedings during its case-in-chief. This ruling is without prejudice to the Government seeking leave outside the jury's presence if the evidence becomes relevant to bias, motive, credibility, or another proper purpose during trial.

DATED: April 27, 2026

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER – 1**